UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE: 2-1-18

--------------------------------------------------------------x

JESSICA SZABO,

           Plaintiff,

v.

MID-HUDSON FORENSIC PSYCHIATRIC
CENTER, JOSEPH FREEBERN, DIANA
PARASCHIV, OSIRIS RIVAS, FREDERICK
RHOADES, DAWN ANDERSON, MARIE
NADINE LEONTY, JORDAN MIRLANDE,
MIRIAM GROSSMAN, BETH BOYARSKY,
RADAMUS JORGE, JULIA GONZALEZ,
SHAHLA GOROVY, TAMEKA MEDLIN,
JOANNA BROCK, LISA RODRIGUEZ,
TAMMIE MILLER, LINDSEY JORDAN,
INGRID MONTGOMERY, NEW YORK
STATE POLICE INVESTIGATOR RAYMOND
WALTER, NEW YORK STATE POLICE
TROOPER SCOTT HILLIARD,

           Defendants.

**OPINION AND ORDER**

16 CV 7293 (VB)

--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Jessica Szabo, proceeding pro se and in forma pauperis, brings this action under

42 U.S.C. § 1983, alleging eighteen current and former employees of Mid-Hudson Forensic

Psychiatric Center ("Mid-Hudson") and two New York State Police Department employees

(collectively the "State defendants") violated her constitutional rights while she was

involuntarily retained as a patient at Mid-Hudson.[1]

---

[1]     When the case was initiated there were four plaintiffs, Jessica Szabo, Dawn Dippell,
Thomas Aikens, and Kathleen Denario. By Memorandum Endorsement dated April 18, 2017,
the Court granted Dippell's application for voluntary dismissal. (Doc. #53). By Order dated
May 2, 2017, the Court dismissed Denario pursuant to Rule 41(b) of the Federal Rules of Civil
Procedure for failure to prosecute or comply with Court Orders. (Doc. #57). By Opinion and
Order dated September 18, 2017, the Court dismissed the claims brought by Aikens and
terminated him as a plaintiff. (Doc. #115). Szabo is thus the only plaintiff remaining in the case.

Now pending is the State defendants' motion to dismiss the amended complaint.

For the reasons set forth below, the motion is GRANTED. However, plaintiff is granted leave to file a second amended complaint, with the limitations explained below.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of the amended complaint as true, and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff was involuntarily retained as a patient at Mid-Hudson from June 7 to October 3, 2016, and again from November 22, 2016, to May 17, 2017, while she awaited trial on criminal charges brought against her.

Plaintiff alleges on June 7, 2016, (i) defendants Brock and Paraschiv refused to allow her to use her cane, (ii) defendant Miller held plaintiff down, withdrew blood, and implanted a "PPD skin test" against plaintiff's will (Am. Comp. at 9), and (iii) defendant Paraschiv did not allow plaintiff to wear her wrist splints or provide her with another pair of splints.

Plaintiff alleges on June 8, 2016, defendants Andersen, Jorge, and Rodriguez did not intervene when "an unsupervised close up female patient . . . broke [plaintiff's] glasses and . . . assaulted [plaintiff] by punching her in the face" (Am. Compl. at 9), and that defendant Rodriguez "failed to interven[e] and report when [defendant Andersen] assaulted [plaintiff] by trying to pull her down a hill because she couldn't walk without [a] cane." (Id.).

On June 14, 2016, defendant Rhoades allegedly "did not allow the plaintiff to participate in creating her treatment plan" and "made numerous amounts of false statements in [plaintiff's]

treatment plan . . . [c]auing a[]lot of misunderstandings and causing [plaintiff] to be

misdiagnosed twice and unable to progress in her treatment." (Am. Compl. at 9-10).

Plaintiff alleges on July 12, 2016, defendant Jordan ordered defendant Brock to "use

excessive force to force an (unknown) injection into [plaintiff's] left butt cheek . . . [c]ompelling

her to take medication against her will . . . [and c]ausing [plaintiff] to suffer from severe neck

stiffness and dizziness with heart palpitations." (Am. Compl. at 10). The next day, defendant

Rivas allegedly ordered defendant Medlin "by excessive force to force an injection of unknown

medication into [plaintiff's] left butt cheek." (Id.).

On July 26 and 27, 2016, defendants Grossman and Gorovoy "found [plaintiff] fit to

proceed," but that the next week defendants Montgomery and Grossman "lied and stated that

[plaintiff] was not found fit . . . [a]nd failed to interven[e] on behalf of her." (Am. Compl. at 10).

On August 8, 2016, defendant Andersen allegedly told defendant Gonzalez "to illegally

touch [plaintiff's] breast inappropriately by pinching her left nipple . . . [c]ausing pain and

discomfort during an illegal search." (Am. Compl. at 10). Plaintiff alleges defendant Jorge

failed to intervene.

On August 10, 2016, defendants Freebern, Paraschiv, Rivas, Rhoades, Andersen, Leonty,

Rodriguez, and Jordan allegedly "failed to assure that [plaintiff] received the proper medical

GYN care due to her continuous brown discharge . . . [s]econdary to bacterial vaginous (sic) that

she believes was caused from the filth of Mid-Hudson since 6/7/16." (Am. Compl. at 10).

On August 17, 2016, defendant Paraschiv "performed a GYN examination without the

proper sub specialty license . . . [c]ausing severe pain and discomfort [and] [l]eaving [plaintiff]

improperly treated as per Center for Disease Control recommendations." (Am. Compl. at 10).

On August 20, 2016, plaintiff alleges she "was informed by the U.S. Department of State that Charles T. Rawley obtained a Passport for J.P.S.R. without [plaintiff's] consent and knowledge fraudulently." (Am. Compl. at 10). She further alleges defendants Freebern, Paraschiv, Leonty, Montgomery, Walter, and Hilliard, "intentionally refused to help, interven[e] and restricted [plaintiff's] phone calls and access to her lawyers, courts, and law officials . . . [e]ven when [she] explained that J.P.S.R. was kidnapped out of the U.S.A. for possible drug trafficking and possible sexual[] exploitation." (Id.).

On August 25, 2016, defendant Jane Doe 1 allegedly "squeezed [plaintiff's] breast during an illegal search . . . causing embarrassment and discomfort while laughing," and defendant Jorge again failed to intervene, instead stating to plaintiff, "that sounds great!" (Am. Compl. at 10).

Plaintiff alleges on September 1, 2016, defendant Montgomery prescribed Abilify for plaintiff, which caused "increased hung[er]" and weight gain.

Plaintiff further alleges that during her second "unlawful commitment" at Mid-Hudson she was "terrorized, denied proper medical and psychiatric care, safety, privacy, enough clothing, enough food and denied access to Building 5's elevator even with an elevator pass," and that she was "exposed to excess filth, mold, dirt, bugs, unsanitary toilets, chairs and improper[ly] washed linen causing break outs on her back and . . . an infected toe." (Am. Compl. at 10-11).

## DISCUSSION

I.    Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft

v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II.     Exhaustion

Defendants argue it is apparent from the face of the amended complaint that plaintiff has failed to exhaust her administrative remedies.

The Court disagrees.

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under . . . Federal law[ ] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

However, only those remedies that are "available" to the prisoner may be exhausted. Williams v. Correction Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016) (citing Ross v. Blake, 136 S. Ct. 1850, 1856 (2016)).

An administrative remedy is considered "unavailable" in three circumstances: (i) when the administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (ii) "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" and "so confusing that . . . no reasonable prisoner can use them"; or (iii) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 136 S. Ct. at 1859-60.

Here, defendants argue "[t]he process for filing complaints [at Mid-Hudson] is clearly written in the Patient Handbook." (Defs.' Br. at 12). They submit the declaration of Paul Hand,

the Director of Risk Management at Mid-Hudson, who outlines the "five-step process for a patient to lodge and pursue complaints about her treatment at Mid-Hudson." (Hand Decl. ¶ 6).

However, the Court has reviewed the Mid-Hudson Handbook itself and finds the administrative grievance scheme too opaque for use.

First, the word "grievance" does not appear anywhere in the relevant section of the Handbook. Instead, the relevant section is labeled "Concerns," which may not put a patient on notice that it contains the grievance procedures. (Hand Decl. Ex. A at 22).[2]

Second, three of the five steps outlined contain language suggesting that the step is optional, not required. In particular, step 3 states, "[i]f you still need additional information or you have not been satisfied with the responses you received, you _may_ dial the in-house number . . . and leave a message." (Hand Decl. Ex. A at 23) (emphasis added). Likewise, step 4 states "[i]f you choose, you _may_ also submit your concern or complaint in writing to the Risk Management Department." (Id.) (emphasis added). Step 5 states, "[i]f you still have concerns which you feel still need to be addressed, you _can_ write to the Executive Director." (Id.) (emphasis added). It is far from apparent based on this language that a patient's grievances will not be considered administratively exhausted unless and until all five steps are completed.

Based on the foregoing, defendants' argument on this point is plainly meritless. The Court thus declines to dismiss the amended complaint on exhaustion grounds.

III.     Personal Involvement

The Court agrees with defendants that plaintiff has made no allegations against defendants Boyarsky and Mirlande, and that they must therefore be dismissed for lack of

---

[2]     The Court also notes that the section heading appears as the last word at the very bottom of the page before the procedure is explained, which makes it easy to miss, even with the help of the Index.

personal involvement. <u>Grullon v. City of New Haven</u>, 720 F.3d 133, 138 (2d Cir. 2013) ("in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation").

IV.    <u>Denial of Access to Courts</u>

The Court likewise agrees with defendants that plaintiff's amended complaint fails to state a First Amendment claim for denial of access to the courts against Mid-Hudson defendants Freebern, Paraschiv, Leonty, Montgomery, or New York State Police defendants Walter and Hilliard.

To state a claim for denial of access to the courts, "a plaintiff must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotation omitted). Moreover, "a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." <u>Cancel v. Goord</u>, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001).[3]

Here, plaintiff alleges she was denied access to the courts when, on August 20, 2016, she "was informed by the U.S. Department of State that Charles T. Rawley obtained a Passport for J.P.S.R. without [plaintiff's] consent and knowledge fraudulently" and that defendants Freebern, Paraschiv, Montgomery, Walter and Hilliard "intentionally refused to help, interven[e] and restricted [plaintiff's] phone calls and access to her lawyers, courts, and law officials." (Am. Compl. at 10).

---

[3]    Because plaintiff is proceeding <u>pro se</u>, she will be provided with copies of all unpublished opinions cited in this decision. <u>See</u> <u>Lebron v. Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009).

First, this allegation is largely incomprehensible, as there is no explanation in the amended complaint regarding who "Charles T. Rawley" and "J.P.S.R." are or what they have to do with plaintiff's claims here. This alone is grounds for dismissal. Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (Plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (internal quotation marks omitted).

Second, plaintiff's amended complaint is devoid of allegations suggesting that defendants' conduct caused her actual injury, such as dismissal of a valid claim or case.

Accordingly, plaintiff's denial of access to courts claim is dismissed.

V.    Inadequate Medical Care Claims

Defendants argue plaintiff's amended complaint fails plausibly to allege an inadequate medical care claim.

The Court agrees.

To assert a constitutional claim for inadequate medical care under Section 1983, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To state a claim, plaintiff must plead facts showing (i) the alleged deprivation of medical care is "sufficiently serious," and (ii) the officials in question have acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

With respect to the first prong, the seriousness of deprivation requirement has two subparts. "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required. Salahuddin v. Goord, 467 F.3d at

279 (citing Farmer v. Brennan, 511 U.S. 825, 839–40 (1970)). The second inquiry is "whether the inadequacy in medical care is sufficiently serious," and requires an analysis of "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin v. Goord, 467 F.3d at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).

To satisfy the second prong of an inadequate medical care claim under the Fourteenth Amendment, a pretrial detainee "must prove that the defendant-official acted intentionally . . . or recklessly failed to act with reasonable care to mitigate the risk" of harm, "even though the defendant-official knew, or should have known," that the care "posed an excessive risk to health or safety." Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017).

Here, plaintiff's amended complaint contains multiple alleged infractions related to her medical care. In particular, plaintiff alleges she (i) was not permitted to use a cane or wrist splints, (ii) was not permitted to participate in creating her treatment plan, (iii) was injected with unknown medications on at least two occasions, (iv) did not receive proper gynecological care, (v) was touched inappropriately,[4] (vi) was improperly prescribed Abilify, and (vii) generally denied proper medical and psychiatric care.

However, the amended complaint is devoid of any allegations that she suffered serious harm from these alleged incidents—in fact, the amended complaint suggests any injuries were only minor. Even plaintiff's July 12, 2016, allegation—that she "suffer[ed] from severe neck stiffness and dizziness with heart palpitations" after she was injected with an unknown

---

[4] It is not clear from the complaint whether plaintiff's allegations that her breast was inappropriately pinched on two occasions was in the course of medical treatment or as part of separate incidents. Plaintiff's second amended complaint should clarify this point, especially to the extent she intended to include a separate cause of action for excessive force.

medication—is insufficient. (Am. Compl. at 10). In particular, plaintiff does not state how long this condition persisted or whether or to what extent it affected her daily activities. See Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (in determining whether an alleged injury is a "serious" medical condition, "[f]actors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain") (internal quotation marks omitted). The same is true of plaintiff's complaint of improper gynecological care on August 17, 2016, which she alleges caused her "severe pain and discomfort." (Am. Compl. at 10).

Moreover, plaintiff has failed to allege defendants acted with deliberate indifference to her medical needs. She says nothing about the alleged motivation behind defendants' actions to suggest whether it was objectively unreasonable.

Accordingly, plaintiff's inadequate medical care claim is dismissed.

VI.     Other Constitutional Claims

To the extent plaintiff's complaint may be liberally construed to contain other constitutional claims, they are also insufficient as a matter of law.

First, plaintiff alleges certain defendants did not intervene when another patient assaulted her. To the extent this was intended as a failure to protect claim, it is dismissed because plaintiff fails to allege the defendants involved were deliberately indifferent when they allegedly did not intervene in the assault. See Darnell v. Pineiro, 849 F.3d at 35.

Second, to the extent plaintiff intended to include a conditions of confinement claim regarding her "second unlawful commitment"—namely, that she was "terrorized, denied proper medical and psychiatric care, safety, privacy, enough clothing, enough food and denied access to

11

Building 5's elevator even with an elevator pass," and that she has been "exposed to excess filth, mold, dirt, bugs," etc. (Am. Compl. at 10-11)—those allegations are far too conclusory to state a legally cognizable claim. Ashcroft v. Iqbal, 556 U.S. at 678.

VII.    Monetary Damages and Injunctive Relief

Plaintiff's claims for monetary damages against individual defendants acting in their official capacities are barred by the Eleventh Amendment. See Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993). Accordingly, all monetary damages claims against the individual defendants acting in their official capacities are dismissed; monetary claims against the individual defendants in their individual capacities may proceed.

In addition, any claims for injunctive relief related to Mid-Hudson are dismissed as moot because plaintiff is no longer housed at Mid-Hudson. See Muhammad v. City of New York Dep't of Corr., 126 F.3d 119, 123 (2d Cir. 1997) (injunctive relief claims became moot when plaintiff was released from prison because he "lack[ed] any continuing personal stake in the outcome" of the case).

VIII.   Leave to Amend

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation omitted). District courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation omitted).

However, leave to amend may "properly be denied for . . . futility of amendment." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). This is true even when plaintiff is proceeding pro se. See Martin v. Dickson, 100 F. App'x 14, 16 (2d Cir. 2004) (summary order).

Here, because a liberal reading of plaintiff's complaint indicates valid claims might be stated, and because plaintiff has only amended her complaint to add the names of defendants pursuant to a Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997) Order, the Court grants plaintiff leave to file a second amended complaint and replead her claims to the extent she can do so clearly, concisely, truthfully, and plausibly.

**The second amended complaint will completely replace, not supplement, the amended complaint. Therefore, plaintiff must include in the second amended complaint all information necessary for her claims.** However, plaintiff is directed to include in her amended complaint only those facts and documents she believes plausibly support a violation of her constitutional rights. Plaintiff shall not burden the Court with extraneous information or issues that are constitutionally insignificant or have already been resolved. Finally, plaintiff is advised that it is in her interest to include only those claims that are truly significant. She should keep in mind that the inclusion of constitutionally insignificant quibbles tends to detract from potentially valid claims.

## CONCLUSION

Defendants' motion to dismiss is GRANTED.

Plaintiff is granted leave to file a second amended complaint with the limitations described herein. Plaintiff shall use the Second Amended Complaint form attached hereto.

**Plaintiff shall file her second amended complaint by no later than March 5, 2018. If plaintiff fails to comply with this Order, the case may be dismissed for failure to prosecute or failure to comply with a court order. Fed. R. Civ. P. 41(b).**

Finally, the Court has previously instructed plaintiff that it is her obligation to notify the Court in writing if her address changes. (See Docs. ## 14, 56). Moreover, plaintiff appears to be aware of this obligation, as evidenced by the fact that she has filed several notices of change of address in this case to date. (See Docs. ## 3, 11, 63, 82, 88). Nevertheless, the New York State Department of Corrections and Community Supervision website indicates that plaintiff was released from custody on December 28, 2017. Yet she has not updated her address.

**Accordingly, by March 5, 2018, plaintiff shall update her address on the docket. If she fails to do so, the Court may dismiss this case.**

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion (Doc. #103) and mail a copy of this Opinion and Order to plaintiff Jessica Szabo at the address that appears on the docket.

Dated: February 1, 2018
     White Plains, NY

               SO ORDERED:

               Vincent L. Briccetti
               United States District Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

No. _____
(To be filled out by Clerk's Office)

## SECOND AMENDED
## COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes     ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

## I.  LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.  PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name          Middle Initial          Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City          State          Zip Code

## III.  PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name              Last Name                 Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                State             Zip Code

Defendant 2:

First Name              Last Name                 Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                State             Zip Code

Defendant 3:

First Name              Last Name                 Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                State             Zip Code

Defendant 4:

First Name              Last Name                 Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                State             Zip Code

# V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were
harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach
additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | Plaintiff's Signature |
|---|---|

| First Name | Middle Initial | Last Name |
|---|---|---|

Prison Address

| County, City | State | Zip Code |
|---|---|---|

Date on which I am delivering this complaint to prison authorities for mailing: _____